**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **1 FITZWATER STREET, LLC** | * | |
| | * | |
| *Plaintiff,* | * | |
| v. | * | Case No. 1:25-cv-1328-JMC |
| **RANDOLPH J. TAYLOR, ET AL.** | * | |
| *Defendants.* | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION AND ORDER

Plaintiff, 1 Fitzwater Street, LLC, ("Developer"), initiated the present lawsuit on April 25, 2025 (ECF No. 1). Plaintiff asserts a 42 U.S.C. § 1983 claim (Count I) against Defendant Randolf Taylor ("Mayor Taylor") and a breach of contract claim (Count II) against Defendant City of Salisbury (the "City"), stemming from Defendants' alleged express grant of development rights of a Salisbury, Maryland waterfront property. (ECF No. 1). As to Defendant Count I, Plaintiff asserts that Defendant Mayor Taylor deprived Plaintiff of its property interest in the development without just compensation or due process of law. (ECF No. 1) As to Count II, Plaintiff asserts that Defendant City breached its contract with Plaintiff. (ECF No. 1). Presently pending before the Court is Defendants' Partial Motion to Dismiss Count I of Plaintiff's Complaint. (ECF No. 13). The motion has been fully briefed (ECF Nos. 20, 23) and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth herein, Defendants' Partial Motion to Dismiss (ECF No. 13) shall be granted.

## I.    BACKGROUND

In 2016, Plaintiff entered into "a Land Disposition Agreement whereby the City agreed to convey or lease certain real property located at or about 1 Fitzwater Street, Salisbury, MD 21801…for development.".  (ECF No. 1 at 2).[1]  The City enacted Resolution 3137 approving an amended land disposition agreement (the "LDA") and "authorizing the city to enter into the LDA." The parties then entered into the present LDA in early 2022.  *Id.* at 3.  Plaintiff asserts that the "express purpose" of the LDA was the following:

> the City desires to sell to Developer and Developer desires to Purchase from the City [the Property] for the express purpose of Developer's development and construction of: **(i)** two (2) five (5) story or more tall mixed-use buildings containing not less than twenty-eight (28) apartment units (each such building is hereinafter referred to as a/the "**Marina Landing Towers**" and collectively the "**Marina Landing Towers**"); **(ii)** one (1) five (5) story or more mixed-use building. consisting of **(A)** first (1st) floor commercial floorspace developed for the operation thereon of a boathouse business and any other use reasonably related thereto, and **(B)** the second (2nd) through fifth (5th) floors containing not less that twenty (20) apartment units (said five (5) story building is hereinafter referred to as the "**Boathouse Building**") . . . [as] more particularly depicted on the Development Plan attached hereto and incorporated herein as **Exhibit C** (hereinafter referred to as the "**Marina Landing Development Plan**").

*Id.* (quoting ECF No. 1-1) (emphasis in original).

"The LDA provides '[t]he City shall cooperate with Developer in obtaining any and all approvals and/or permits necessary for Developer's development and construction of the project,'" (the "Marina Landing Project").  *Id.*  Plaintiff alleges the "LDA further provides that the City shall reserve a City parking lot…proximate to the Property to provide parking for the Marina Landing

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. Where a document does not have an electronic filing stamp, the Court is referring to the page numbers at the bottom of the document.

Project and requires the City to enter into a "Parking Lot Exclusive Use Agreement" (the "Parking Lot Agreement")." *Id.* at 4.

The parking lot subject to the Parking Lot Agreement was also subject to a contract between the City and Frank Hanna Sr.'s restaurant, Brew River (the "Brew River Restaurant"). *Id.* at 6. Plaintiff alleges that Frank Hanna, Sr. purchased a property from the City pursuant to an earlier resolution "which authorized a disposition contract that granted certain rights concerning the Parking Lot." *Id.* at 6. Plaintiff further alleges those provisions "were never established by a recorded easement agreement or a recorded plat notation" and that Plaintiff therefore "lacked actual knowledge" of the agreement with Frank Hanna Sr. *Id.* at 7. Under the LDA, Plaintiff alleges access to "all parking spaces…for the exclusive uses of (i) public parking and (ii) parking for the Marina Landing Project." *Id.*

Plaintiffs assert that after executing the LDA and Parking Lot Agreement, the Developer's affiliate "commenced the permitting process for the Marina Landing Project and worked towards closing on the property by, inter alia, finalizing the subdivision plat, finalizing permits, and securing building inspector approvals for the Project." *Id.* at 4. Then, the parties closed on the purchase of the Property "pursuant to the LDA" and "entered into the Parking Agreement" in June of 2023. *Id.*

Plaintiff asserts that following Defendant Mayor Taylor's election to office, he "turned his attention to the Marina Landing Project and instructed City employees to not cooperate with [it] so he could renegotiate the LDA and exact further concessions from Developer." *Id.* at 5. Thereafter, "City officials refused to disclose to Developer the amount of the Building Permit Fee" "even though City officials had already approved all requirements for the building permit" and "also refused Developer's pro forma request for an extension of its Site and Grading permit." *Id.*

Plaintiff alleges these approvals were non-discretionary under the LDA and Resolution 3137. *Id.* at 8. When Developer asked Mayor Taylor why the City "refus[ed] to cooperate with these basic requests," Developer specifically asked "are you holding my Project?" to which Mayor Taylor responded, "yes." *Id.* at 5.

On February 14, 2025, Plaintiff's counsel sent the City "formal notice of the City's breach of the LDA." *Id.* at 6. Plaintiff alleges Mayor Taylor "did not cure the breaches" after receiving Plaintiff's formal notice. *Id.* In response, Mayor Taylor sent a letter on February 24, 2025, "(1) stating that the City's parking obligations in Section 1.16 of the LDA are in conflict with a prior reservation of the parking lot to Frank Hanna, Sr.'s restaurant and (2) seeking to "downsize" the already approved Marina Landing Development Plan to reduce the Project's likely parking needs." *Id.* Specifically, Defendant Mayor Taylor indicated, "it appears that – at the very least – the City is obligated to Mr. Hanna to operate the parking lot for the public use on an equal opportunity basis, which has been the case for 25 years." (ECF No. 1-5 at 3). He suggested a meeting at which the parties could discuss "each party's obligations under the LDA, your clients' requests for permits, and the parking issues I have outlined." (ECF No. 1 at 4). Consequently, the parties attended that meeting. (ECF No. 1 at 6). On April 4, 2025, Mayor Taylor sent another correspondence after the parties' meeting. (ECF No. 1-6). He urged,

> You don't want to lead with –"park at Brew river" -and walk 750 ft in the rain, at night, etc. Your parking needs to be proximate, well lit, assigned as such – dependable.
>
> The city wants you to be successful. As Mayor, I want you to be successful…in my view, the current rolodex of options you provided – in my mind – are not on the table."

*Id.* at 2-3.

Plaintiff does not allege any specific communications with Defendant Mayor Taylor after the April 4, 2025, letter. (ECF No. 1). Three weeks later, Plaintiff filed the instant action on April

25, 2025. *Id.* Defendants now move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Count I for failure to state a claim. (ECF No. 13).

## II.    LEGAL STANDARD

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted). In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F. Supp. 133, 136 (D. Md. 1995) (internal citations omitted). The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

"If the court considers matters outside of the pleadings on a Rule 12(b)(6) motion, it shall treat the motion as one for summary judgment, to be disposed of under Rule 56, and provide all parties a 'reasonable opportunity to present all material made pertinent to such a motion.'" *Nader v. Blair*, No. WDQ-06-2890, 2007 WL 6062652, at *4 (D. Md. Sept. 27, 2007), *aff'd*, 549 F.3d

953 (4th Cir. 2008) (quoting Fed. R. Civ. P. 12(b)). However, "[u]nder limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019). "Those limited circumstances are matters of public record, documents explicitly incorporated into a complaint by reference or attached to the complaint as exhibits, or any document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Shields v. Verizon Md., LLC*, No. 1:23-CV-02932-JMC, 2024 WL 1050996, at *4 (D. Md. Mar. 11, 2024) (quotation omitted). "A document is integral to the complaint if its very existence, and not the mere information it contains, gives rise to the legal rights asserted." [2] *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021), *aff'd*, No. 21-2432, 2022 WL 17985700 (4th Cir. Dec. 29, 2022), *and aff'd*, No. 21-2432, 2022 WL 17985700 (4th Cir. Dec. 29, 2022) (quotation omitted).

## III.    ANALYSIS

Plaintiff asserts entitlement to 42 U.S.C. § 1983 relief based on three constitutional deprivations.  (ECF No. 1 at 8-9).  Plaintiff contends that Mayor Taylor deprived it of a vested property interest in the Marina Landing Project without (1) procedural due process, (2) substantive due process, and (3) just compensation. *Id.* at 8.  Accordingly, there are five issues presently before the Court: (1) Whether the § 1983 claim against Mayor Taylor is redundant when Plaintiff also sued the City for breach of contract; (2) whether the LDA and Resolution 3137 created a constitutionally protected property interest; (3) whether Plaintiff pled a cognizable procedural due process violation; (4) whether Plaintiff pled a cognizable substantive due process

---

[2] This Court reviewed and does not consider Defendant's exhibits attached to its Motion to Dismiss.  (ECF No. 13).

violation; and (5) whether Plaintiff pled a cognizable regulatory takings claim. (ECF Nos. 13, 20, 23).

### A.    Redundancy Does Not Require Dismissal, and Any Duplicative Effect of Count I is Minimal.

Defendants argue that Plaintiff's § 1983 claim against Defendant Mayor Taylor is redundant because "it is the same as suing the City itself." (ECF No. 13 at 6). Plaintiff argues that "there is no redundancy or duplication" because "Developer conspicuously only asserts Count I against Mayor Taylor." (ECF No. 20 at 5).

It is settled that a government entity is the "real party in interest" in an official capacity suit against a government official. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). However, simply because a "suit against a municipal officer in his or her 'official capacity' is to be treated as a suit against the entity itself," that does not mean an additional suit against a city official must automatically be dismissed as redundant. *Chase v. City of Portsmouth*, 428 F.Supp.2d 487, 489 (E.D. Va. 2006) ("A significant amount of case law shows government officials named in their official capacities alongside the entities for which they are associated, especially where the alleged violations of a plaintiffs' rights occurred because of specific individuals."). Specifically, *Chase v. City of Portsmouth* recognized that while "naming both the City of Portsmouth and the four Council Members who voted against the permit in their official capacities is redundant as far as damages are concerned," there were "important benefits" of proceeding with the suit against the officials. *Id.* at 490.

However, even duplicative claims do not require dismissal. *Jennings v. Frostburg State University*, Civil No. ELH-21-656, 2021 WL 5989211, at *10 (D. Md. 2021) (refusing to dismiss a duplicative claim against a state official because plaintiff asserted "that a particular individual violated his rights."); *Duncan v. Prince George's County*, Civil Action No. 8:18-cv-01378-PX,

2018 WL 6621503, at *3 (D. Md. Dec. 18, 2018).    When there is some duplicative nature, "courts have exercised discretion to dismiss the official when the entity is also sued." *Duncan*, 2018 WL 6621503, at *3 (citing *Fink v. Richmond*, No. DKC 2007-0714, 2009 WL 3216117, at *4 (D. Md. Sept. 29, 2009).

While Plaintiff sues both the City and Mayor Taylor, the causes of action are distinct. (ECF No. 1).    Count I alleges that Mayor Taylor, on behalf of the City, specifically violated its constitutional rights. *Jennings*, 2021 WL 5989211, at *10; *Chase*, 428 F.Supp.2d at 489; *Duncan*, 2018 WL 6621503, at *3.    While a § 1983 claim against Mayor Taylor and a breach of contract action against the City would both impose liability against the City, the case law does not require dismissal of this case for that reason alone.    *Jennings*, 2021 WL 5989211, at *10; *Chase*, 428 F.Supp.2d at 489.    Plaintiff alleges that Mayor Taylor is the city member responsible for the violations and seeks to impose public accountability for those violations.[3]    (ECF Nos. 1, 23). Therefore, this Court will not dismiss Count I on these grounds.

### B.    Plaintiff Alleges a Plausible Property Interest Because the LDA Creates Bilateral Development, Parking, and Permitting Obligations that are Non-Discretionary.

Defendants argue this is "a simple breach of contract action."  (ECF No. 13 at 4, ECF No. 23 at 6).  Defendants assert in their reply brief (ECF No. 23) that they do not challenge whether Plaintiff had a property interest in its right to develop the property under the LDA.  (ECF No. 23 at 7-8).  However, they do argue that Plaintiff "attempts to transform the breach [of contract] into multiple constitutional torts, which is not permitted."  *Id.* at 6.  They posit that Plaintiff has not responded to this argument. *Id.*  at 7.  But Defendants miss the issue: A § 1983 claim predicated

---

[3] Defendants argue that *Duncan* is too factually different from this case to apply.  (ECF No. 23 at 4-5).  The facts are clearly different.  *Duncan*, 2018 WL 6621503, at *2-3. However, *Duncan* does not stand for a rule that public accountability must involve "a prolonged pattern of violence" like that described in *Duncan*.  *Id.* at *3.  Rather, it demonstrates one example of this Court "exercis[ing] discretion to dismiss the official when the entity is also sued." *Id.*

on Constitutional deprivations arising from a contract requires that the contract creates a property right in the first place.[4] *Blackwell v. Mayor & Comm'rs of Delmar*, 841 F.Supp. 151, 156 (D. Md. 1993) (recognizing that only the contracts that create a property right are actionable under § 1983). That is, the existence of the contract here does not negate a constitutional claim, it potentially creates it. Therefore, the issue before the Court is whether this claim is "a simple breach of contract," as Defendants put it, or a cognizable § 1983 claim arising from a protected property interest provided by contract. *Blackwell v. Mayor & Comm'rs of Delmar*, 841 F.Supp. at 155; *Linton v. Frederck County Bd. of Cnty. Comm'rs*, 964 F.2d 1436, 1438 (4th Cir. 1992) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 600 (1972)) *S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962, 966-67 (2nd Cir. 1988).

To that end, Plaintiff avers that Resolution 3137 (authorizing the LDA) and the LDA creates a property right in Developer's "development and construction of" the Marina Landing Project. (ECF No. 20 at 8). According to Plaintiff, "Resolution 3137 provides that '[t]he City shall cooperate with Developer in obtaining any and all approvals and/or permits necessary for

---

[4] Defendants aver "at no point did Defendants' Motion assert that Plaintiff lacks a property interest…[Th]at is not what the City asserted as the reason why the constitutional claims fail." (ECF No. 23 at 8). Defendants' assertion here fails to recognize the property-interest question embedded in their argument that Plaintiff brings a mere breach of contract dispute. Defendants' argument necessarily raises the question of whether the contract creates a property right. If it does not, it is a simple contract that does not entitle Plaintiff to relief under § 1983. *Blackwell v. Mayor & Comm'rs of Delmar*, 841 F.Supp. 151, 156 (D. Md. 1993). If it does create a property right, the due process and takings inquires must continue. *Id.* The Court does, however, recognize Defendants' position—regarding procedural due process— that

> [T]here was no procedural due process violation because even if Marina Landing disagreed with the Mayor regarding the parking insufficiency or potential conflict with City obligations to Brew River/Mr. Hanna or the public, the Complaint acknowledges that Plaintiff and the City had discussions and negotiations regarding the issue, both written and verbal, which caused a "delay" in the issuance of a building permit to Marina Landing. That "delay" was not a violation of Plaintiff's constitutional rights – it was a bona fide dispute.

(ECF No. 23 at 8).

That argument will be addressed in the procedural due process portion of this analysis.

Developer's development and construction" and "provides for the perpetual dedication of a City parking lot for the express purpose of providing parking for the development." *Id.* Specifically, Plaintiff alleges it has a property interest in "the development of the Marina Landing Project" because Resolution 3137 "strips the City, or Mayor Taylor, in his official capacity, of discretion to require modifications or refuse permitting." *Id.* at 9. Plaintiff asserts even absent Resolution 3137, the LDA alone confers a property interest. "Although admittedly not the typical constitutional claim," Plaintiff posits "the unusually specific conferral of development rights via a municipal ordinance creates a constitutionally protected property interest in the development rights themselves, and particularly the parking rights, and permits remedies under § 1983…" (ECF No. 20 at 2).

Not all contracts create a property right. *Uzokwu v. Prince George's Cmty. College Bd. of Trustees*, Civil Action No. DKC 12-3228, 2013 WL 4442289, at *8 (D. Md. 2013) (citing *Coastland Corp. v. Cnty. of Currituck*, 743 F.2d 175, 178 (4th Cir. 1984)); *S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962, 966-67 (2nd Cir. 1988). Whether a contract between a municipality and a private entity creates a constitutionally protected property right is a fact-dependent issue that has created "substantial difficulty" for the courts. *Blackwell*, 841 F.Supp. at 155. In *Blackwell*, this Court adopted the Second Circuit's approach to determining whether a public contract creates a constitutionally protected property right. *Id.* After *Blackwell*, Maryland courts must determine whether the contract (1) created an entitlement and (2) whether the property right is "a type according protection under the due process clause." *Id.* at 156. "To satisfy this second element, the government's action in terminating the contract must result in revocation of the plaintiff's 'status.'" *Id.*

Several cases after *Goldin* and *Blackwell* are instructive. *Uzokwu v. Prince George's Community College Board of Trustees* dismissed § 1983 due process claims based on an alumni membership contract because the plaintiff failed to "allege specific factual allegations…about the benefits associated with [p]laintiff's membership…or the provisions of any membership agreement she entered into" that would entitle her to protection. *Uzokwu*, 2013 WL 4442289, at \*8. In another instance, *Orange County Rescue Squad, Inc. v. County of Orange* concluded that a contract failed to create a property right when a franchise agreement included a provision allowing the government to terminate the franchise for noncompliance, and the plaintiff failed to plead that it enjoyed a "special or protected status" under the agreement. *Orange County Rescue Squad, Inc. v. Cnty of Orange*, No. 1:09CV244, 2011 WL 976768, at \*5 (M.D.N.C. Mar. 17, 2011) (citing *Blackwell*, 841 F.Supp. at 156). Further, "if the government may refuse to provide the benefit [under a contract] at will, without any constraints on its reasons, then the benefit is not a protected property interest." *Southside Trust v. Town of Fuquay-Varina*, 69 Fed. App'x 136, 138 (4th Cir. 2003).

*Frall Developers, Inc. v. Board of County Commissioners for Frederick County* specifically considers an asserted property right in development. *Frall Developers, Inc. v. Bd. of Cnty. Comm'rs*, Civil Action No. CCB-07-2731, 2008 WL 4533910, at \*9-10 (D. Md. Sept. 30, 2008). In *Frall Developers*, the plaintiff alleged constitutional deprivations arising out of a letter of understanding ("LOU"). *Id.* at 9. The plaintiff's property interest was "grounded in the LOU's promise that it will be able to develop its land after obtaining [necessary classification]." *Id.* at \*10. (quoting *Gardner v. City of Baltimore Mayor and City Council*, 969 F.2d 63, 68 (4th Cir. 1992). The Court reasoned that when the defendant agreed to the LOU, "the [defendant] provided plaintiff with more than an 'abstract need' or 'unilateral expectation' of the benefit of developing

11

its land" because "the LOU specifically promised that '[plaintiff] may record the twenty-four lot plat...provided staff comments are addressed.'" *Id.* at 9. Recognizing that it "is a close question," the Court "[could not] conclude as a matter of law that plaintiff [had] no constitutionally protected property interest in the LOU." *Id.* Instead, it concluded the "facts support that the plaintiff had a 'legitimate claim of entitlement' to a reasonable review of its [reclassification request] and a fair opportunity to develop its property." *Id.* (quoting *Gardner*, 969 F.2d at 68).

Like the *Frall Developers* Court, this Court cannot conclude as a matter of law that Plaintiff failed to plead a property interest. *Id.* To the entitlement prong, Plaintiff argues that the allegations regarding the LDA show "specific bilateral rights and obligations based on mutual explicit understandings for the specific development of the Marina Landing Project set forth in the LDA recitals[5]" (ECF No. 20 at 9). The claim of entitlement to the development rights, parking, and permit approval is much like the "'legitimate claim of entitlement' to a reasonable review of its [reclassification request] and a fair opportunity to develop its property" in *Frall Developers*. *Id.* (quoting *Gardner*, 969 F.2d at 68). Specifically, Plaintiff alleges a property interest in the development of the Marina Landing Project. (ECF No. 1 at 8). It alleges a bilateral entitlement arising from Mayor Taylor's non-discretionary requirement to tell Plaintiff "the amount of building permit fees it needed to pay to obtain its otherwise approved building permit." *Id.* No provision in the LDA provides that Defendants' compliance was discretionary. (ECF No. 1-2). Instead, Resolution 3137 (incorporating the LDA) provides, "The City shall cooperate with Developer in obtaining any and all approvals and/or permits necessary for Developer's development and construction of the Project…" (ECF No. 1. at 3.) Plaintiff specifically asserts a

---

[5] This Complaint is also distinguishable from *Uzokwu.* 2013 WL 4442289, at *8 Unlike the *Uzokwu* Complaint, this Complaint attaches and relies on the specific portions of the LDA and Resolution 3137 that it alleges create a property interest. *See id.*

protected status in the development of the Marina Landing Project. *Orange Cnty. Rescue Squad, Inc.*, 2011 WL 976768, at *5; *see Frall Developers*, 2008 WL 4533910, at *9; *see also Goldin*, 844 F.2d at 966-67 (requiring more than "actual ownership of real estate, chattels, or money"). Therefore, at the motion to dismiss stage, the allegations are sufficient to support a plausible inference of a property interest. *Frall Developers*, 2008 WL 4533910, at *9. By this standard, Plaintiff alleges more than a simple breach of contract. *Id.* But possessing such an interest, while necessary, is not by itself sufficient to support a due process claim, as discussed immediately below.

### C.     Plaintiff Fails to Plead Cognizable Due Process Claims.

#### 1.     Plaintiff Received the Process that is Due Under These Facts.

A procedural due process claim requires plaintiff to allege (1) it possessed a constitutionally protected property interest; (2) "some form of state action" caused the deprivation of Plaintiff's property interest; and (3) "the procedures employed were constitutionally inadequate." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013). Based on the analysis above, Plaintiff alleges a property interest. Therefore, the issue is whether Mayor Taylor deprived Plaintiff of its property interest in the development of the Marina Landing Project by constitutionally inadequate procedures. *Id.*

To this end, Plaintiff argues Mayor Taylor should have afforded Plaintiff a hearing before "holding up" the Marina Landing Project because "pre-deprivation process [was] not pragmatically impossible" in this scenario. *Id.* (citing *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986)). Defendants counter, "The Complaint fails to elucidate what 'procedures' or lack of procedures were allegedly violated. If anything, the allegations and attachments to the Complaint demonstrate that the Mayor notified

Plaintiff of his position and then he and Plaintiff argued and/or negotiated regarding it." (ECF No. 23 at 10).

The nature of this action is unlike the typical procedural due process violation. *See, e.g.*, *Brightwell v. Warden*, Civil Action No. RDB-18-2652, 2019 WL 3946476, at * 12 (D. Md. Aug. 21, 2019) (considering a negligent property deprivation in the prisoner's rights context); *Allen v. Dorchester Cnty.*, Civil Action No. ELH-11-01936, 2013 WL 5442415 at *22-*23 (D. Md. Sep. 30, 2013) (considering a property deprivation in the employment context). While not dispositive, the unusual nature of this claim makes it difficult to determine whether and when any deprivation took place.

It is settled that "the fundamental requisite of due process of law is [notice and] the opportunity o be heard." *Allen*, 3013 WL 5442415, at *23 (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914) (alteration in original). Indeed, notice must be "reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 309, 314 (1950). Accordingly, what process is due "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Further, "[a]lthough provision of some pre-deprivation due process is the preferred constitutional course, procedural due process analysis is not complete without consideration of the post-deprivation remedies provided by a state." *Burch v. N.C. Dep't of Pub. Safety*, 158 F.Supp.3d 449, 458 (E.D.N.C. 2016) (citations omitted).

Though not exactly on point, *Barry v. Barchi* provides guidance. *Barry v. Barchi*, 443 U.S. 55, 65 (1979). There, a plaintiff did not receive "a formal hearing prior to the suspension of his license." *Id.* Instead, he "was immediately notified" of the purported cause for the suspension. *Id.*

Thereafter, sixteen days passed between the notification and the imposition of the suspension. *Id.* During that time, the plaintiff had multiple opportunities to present his version of the events to state investigators. *Id.* Accordingly, the Court reasoned, the plaintiff received the process that was due even though he did not receive a pre-suspension hearing. *Id.* at 66.

Review of the Complaint and Exhibits makes clear that if there was a deprivation at all, Plaintiff was afforded the procedural protections this "particular situation demands." *Morrissey*, 408 U.S. at 481. First, it is unclear at which point the deprivation took effect. *C.f. Donnelly v. Maryland*, 602 F.S.upp.3d 836, 858 (D. Md. 2022) (recognizing that it was unclear when a deprivation of a property interest in the development of piers occurred in the takings context when the state prevented plaintiff from accessing its development rights for decades). The allegations do not support an inference that Mayor Taylor effectuated a deprivation of Plaintiff's protected interest in its development of the Marina Landing Project simply because the project did not continue during their negotiation period. Plaintiff's allegation is that Mayor Taylor was "holding up" (and sought reductions to) the Marina Landing Project—not that he extinguished its rights to develop entirely. (ECF No. 1 at 9). In light of ECF Nos. 1-5 and 1-6, the Court views a hold up of development rights more like a suspension of a license than a final discipline in an employment context, for example. *Compare Barry*, 443 U.S. at 65 *with Allen*, 2013 WL 5442415 at *23. Second, even though Plaintiff did not receive a hearing before it learned of the project hold up, Plaintiff hardly alleges a lack of notice or opportunity to be heard on this issue. *Barry*, 443 U.S. at 65. To the contrary, Plaintiff pleads multiple conversations, a re-negotiation, and multiple letters regarding its objections. (ECF Nos. 1-4, 1-5, 1-6). Therefore, Plaintiff fails to plead a cognizable procedural due process claim.

      2.      Plaintiff's Allegations Do Not Support an Inference that the Mayor's Conduct was Arbitrary or Capricious.

Plaintiff argues the Complaint alleges a cognizable substantive due process claim "because Mayor Taylor lacked all discretion under Resolution 3137 and the LDA to require modifications or refuse permitting for the Marina Landing Project." (ECF No. 20 at 14). Defendant counters, "the Mayor/City plainly had a valid government interest in refusing Plaintiff's claim to exclusive parking rights at the City's lot and in attempting to keep the City from being sued." (ECF No. 23 at 12). But Plaintiff's substantive due process claim does not arise solely from the parking rights. (ECF No. 20 at 14). Plaintiff's substantive due process claim rests on the "extraordinary actions, squarely contrary to Resolution 3137 and the LDA to halt County employees from the routine, ministerial act of informing Developer the amount of the building permit fee for the completely unrelated purpose of prohibiting Developer from utilizing the parking rights specifically granted by Resolution 3137 and the LDA." *Id.*

"The Constitution does not tolerate arbitrary and unreasoned action…" *Scott v. Greenville Cnty*, 716 F.2d 1409, 1420 (4th Cir. 1983). To establish a substantive due process claim, Plaintiff must allege (1) a property interest in the development of the Marina Landing Project that "is cognizable under the Fourteenth Amendment's Due Process Clause" and (2) Defendant Mayor Taylor "arbitrarily and capriciously deprived it of that right." *Frall Developers*, 2008 WL 4533910, at *11 (quotations omitted). Substantive due process "is an absolute check on governmental actions notwithstanding the fairness of the procedures used to implement them" and is therefore "a far narrower concept" than procedural due process violations. *Love v. Pepersack*, 47 F.3d 102, 122 (4th Cir. 1995). Accordingly, there exists a "stricter standard for determining whether a property interest is constitutionally protected in a substantive (as opposed to procedural)

due process challenges to municipal land-use decisions." *Frall Developers*, 2008 WL 4533910, at *12 (citing *Gardner*, 969 F.2d at 68).

In *Frall Developers*, this Court recognized that a non-discretionary property interest attached under the Fourteenth Amendment because "'it seems likely from the record that the Board did not have discretion to deny' [plaintiff's reclassification.]"  Relying on *Gardner v. Baltimore Mayor & City Council*, the *Frall Developers* Court reasoned that when "the discretion of the issuing agency [was] so narrowly circumscribed that approval of a proper application [was] virtually assured," the plaintiff possessed a constitutional protected property interest *Id.* (alterations in original) (quoting *Gardner*, 969 F.2d at 68).  Here, based on the property interest reasoning above, this Court follows *Frall Developers*.  The non-discretionary nature of the development rights set forth in the LDA support a protected property interest under the Fourteenth Amendment.

However, *Frall Developers* and other zoning context cases are of limited guidance on the arbitrary and capricious inquiry.  *Frall Developers*, 2008 WL 4533910, at *13-*15; *see also Donnelly*, 602 F.Supp.3d at 859. In *Frall Developers*, the record lacked evidence to support an inference that a zoning board's grounds for zoning reclassification denials were rational.  *Id.* at *14. The *Frall Developers* Court considered whether the board's interpretation of the plaintiff's performance under specific contract provisions warranted reclassification.  *Id.* at *14-*15.  When there was not enough evidence to support rational reasoning under the contract, the Court denied the motion to dismiss as to that claim.  *Id.* at *15. In another instance, *Donnelly v. Maryland* considered a plaintiff's development rights in the construction of piers under a decades-old contract.  *Donnelly*, 602 F.Supp.3d at 858.  There, when the state "simultaneously enjoy[ed] the rights of way [p]laintiffs gave" in exchange for development rights in the piers while it

17

"continuously deny[ing] [p]laintiffs the right to construct piers," "what [d]efendants did can fairly be seen as a deprivation of property far beyond the outer limits of legitimate government action." *Id.* (internal quotations omitted).

First, the conduct here is not like a zoning board's vote upon review of various committee approvals. *Frall Developers*, 2008 WL 4533910, at *13-*15. The allegations do not support an inference that Mayor Taylor has "held up" the Marina Landing Project simply for the sake of doing so. None of the zoning cases involve conflicting contract obligations to multiple parties, each carrying equal legal weight. *See, e.g.*, *Frall Developers*, 2008 W.L. 4533910 at *15 (reviewing a board's reasoning under specific contract provisions); *Donnelly*, 602 F.Supp.3d at 859. Indeed, the April 2025 letter shows Mayor Taylor's efforts to renegotiate the Marina Landing Project in order reconcile the conflicting provisions with its contract to Mr. Hanna. (ECF No. 1-7). While it is true that the City's contract obligations with Plaintiff are not optional, it is at the very least, rational that a mayor who inherited conflicting contracts from a previous office would pause performance[6] in an effort to avoid legal action. Moreover, the government action is much unlike the decades-long halt in *Donnelly*. *Donnelly*, 602 F.Supp.3d at 859. At this juncture, the allegations do not support an inference that a several month halt in performance, during which the Mayor sought to resolve the city's conflicting obligations to multiple parties, was an arbitrary and capricious deprivation of due process "far beyond the outer limits of legitimate government action." *Id.* Therefore, the Complaint fails to allege a plausible substantive due process claim.

---

[6] Plaintiff argues that this was not a delay, but rather an accepted repudiation of the Marina Landing Project. (ECF No. 20). Considering *Frall Developers* and particularly *Donnelly*, the alleged facts do not support an inference that the property right to the development has been extinguished. (ECF Nos. 1-5, 1-6). To the contrary, the exhibits attached to the Complaint support an inference that should a re-negotiation be reached, Plaintiff would continue to develop the Marina Landing Project. (ECF Nos. 1-5, 1-6).

### D.     Plaintiff Fails to Plead a Cognizable Takings Claim.

States may not take private property "for public use, without just compensation." U.S. Const. amend. V. Defendants argue that "Plaintiff's takings claim is not plausible under these facts, as Plaintiff has not been deprived of all economically beneficial uses of the property…nor has the alleged government action 'gone too far' so as to significantly impact Plaintiff's property value or rights." (ECF No. 23 at 14). Defendants continue, "While Plaintiff complains regarding alleged delay and the impact of that delay, it has not alleged facts to demonstrate the type of complete economic destruction of property interests that is required to prove a regulatory taking." *Id.* Plaintiff posits that, "Unlike the vast majority of cases in this nation's takings jurisprudence, Developer is not claiming a taking of its fee simple interest in land. Developer is claiming a taking of its constitutionally protected property interest in the development of the Marina Landing Project." (ECF No. 23 at 15). Plaintiff argues two alternative theories: a per se taking or an ad hoc taking. *Id.* at 15-19.

### 1.     The Allegations Do Not Support a Plausible Inference of a Per se Taking Because Plaintiff's Property Interest Has Not Been Destroyed.

A per se regulatory taking either compels "physical invasion of an owner's property" or denies "all economically beneficial or productive use of land." *Frall Developers*, 2008 WL 4533910, at *10 (quoting *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992)). Plaintiff recognizes that a per se taking occurs if a "regulation denies all economically beneficial or productive use of land." *Lucas*, 505 U.S. at 1015. While the rights asserted here are unique, Maryland has considered a per se taking arising from a property interest in development rights. *See Donnelly*, 602 F.Supp.3d at 857-58. In *Donnelly*, the plaintiffs brought an inverse condemnation claim, alleging they were owed just compensation for an inability to exercise construction rights. *Id.* at 858. Specifically, the *Donnelly* plaintiffs entered into contracts in 1957

that "induced [them] to grant rights of way to the State in exchange for the right to construct piers." *Id.* Under their contract, their only right was to build piers. *Id.* Later, in 2019, plaintiffs "were essentially told they had no right to construct piers after all, which is to say their so called 'rights' to build piers were left in a 'state of economic inutility.'" *Id.* On those facts, the Court reasoned that

> the County, as successor in interest to the State, has continued to hold onto the rights of way and benefitted from them, initially promising just compensation but eventually no compensation at all. So at some point—at least arguably—there was a 'taking' and at another point, decades later, there was 'no just compensation.'

*Id.*

Recognizing that "precisely when the taking in fact is deemed to have occurred and what just compensation is due are inquiries that remain to be explored," the Court denied the motion to dismiss for failure to state a claim on the takings claim. *Id.*

Plaintiff relies on the *Donnelly* reasoning in its argument for a plausible per se taking. It argues, "With respect to Developer's property interest in the City's parking lot, Mayor Taylor's actions repudiating and frustrating Developer's utilization of the granted parking rights effectively consign the rights to a state of economic inutility, thereby leaving Developer with no productive use of their parking rights." (ECF No. 20 at 16). Defendants contend that the facts alleged give rise to "only a temporary impact" that fail to "demonstrate the type of complete economic destruction of property interest that is required to prove a regulatory taking." *Id.* at 14.

Here, Plaintiff's theory—that Mayor Taylor's actions "effectively consign the [parking] rights to a state of economic inutility"—does not align with *Donnelly*. (ECF No. 20 at 16). While the property interests at issue are similar, the conduct differs. The *Donnelly* plaintiff's only alleged property interest was in the development of the piers, which it could not do for decades. *Donnelly,*

602 F.Supp.3d at 858.  Here, Plaintiff's allegations support an inference that since "early 2025," their development rights have been "downsized," "held up," or "reduced," but not that they were destroyed.  Exhibits 4 and 5 do support an inference that Mayor Taylor interfered with and sought to reduce Plaintiff's parking rights.  (ECF Nos. 1-5, 1-6)  Mayor Taylor proposed changes to the project; expressed "the common goal of a successful project"; attended meetings to discuss "each party's obligations under the LDA"; and indicated "the *current* rolodex of options you provided…are not on the table." (ECF Nos. 1-5, 1-6) (emphasis added). By contrast, the *Donnelly* plaintiffs "were essentially told they had no right to construct piers after all, which is to say their so called 'rights' to build piers were left in a 'state of economic inutility.'" *Donnelly,* 602 F.Supp.3d at 858 (citations omitted).  Mayor Taylor's assertions—even "holding up" the Marina Landing Project—do not rise to leaving the development rights under the Marina Landing Project in a "state of economic inutility.[7]" *Id.*   Therefore, the facts alleged do not support a plausible inference that Mayor Taylor's actions constitute a per se taking without just compensation.  *Id.*

> 2.      The Allegations Do Not Support a Plausible Inference of an Ad Hoc Taking Because the Government Interference with Plaintiff's Property Interest Does Not Rise to the Requisite Characteristics of a Taking.

Alternatively, Plaintiff argues that Mayor Taylor's conduct supports a taking under an ad hoc inquiry.  (ECF No. 20)  Indeed, takings may also be recognized:

> When a regulation impedes the use of property without depriving the owner of all economically beneficial use, a taking still may be found based on "a complex of factors," including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with the distinct investment-backed expectations; and (3) the character of the government action.

---

[7] This is not to say that this kind of conduct would *never* support a taking.  *Donnelly* makes that clear.  *Donnelly*, 602 F.Supp.3d at 858 (finding a plausible taking after the plaintiff had been deprived of its development right for over four decades and the government eventually indicated plaintiff had no right to development at all); *see also Frall Developers*, 2008 WL 4533910 at *11 ("The Board's ruling has not denied Frall of *all* beneficial or productive use of its land, and does not prevent Frall from again requesting [reclassification,] and upon obtaining it, productively developing its property in accordance with the LOU.").  At this time, there is not enough to support a taking.

*Murr v. Wisconsin*, 582 U.S. 383, 393 (2017) (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001); *see also Pulte Home Corp. v. Montgomery Cnty*, 271 F.Supp.3d 762, 776 (D. Md. 2017).

Under the first factor, many cases consider a property interest in ownership of land rather than an interest in development rights.   *E.g.*, *Clayland Farm Enterprises, LLC v. Talbot Cnty*, 967 F.3d 346, 355 (D. Md. 2021) (analyzing the property valuations).   However, courts have recognized that a "regulation is not a taking merely because it 'prohibit[s] the most beneficial use of the property…'" *Quinn v. Bd. of Cnty. Comm'rs*, 862 F.3d 433, 442 (4th Cir. 2017) (alteration in original) (quoting *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978).   The *Clayton* court recognized diminutions in property value of 83, 75, and even 92.5 percent have not been enough to establish a regulatory taking.  *Id.* (citing *Pulte Home Corp.*, 271 F.3d at 696; *Henry v. Jefferson Cnty. Comm'n*, 367 F.3d 269, 277 (4th Cir. 2011)).   Moreover, the second factor requires an "objectively reasonable" expectation.   *Pulte Home Corp.*, 271 F.Supp.3d at 777. Finally, under the third factor, courts weigh the public benefit against the interference with the property.  *Id.*

Under the first factor, Plaintiff argues that "[g]iven that the property interest is the development rights granted by Resolution 3137, and particularly the property interest in the City's parking lot, the relevant impact concerns the development and parking rights, not the land as a whole." (ECF No. 20 at 17).  However, Plaintiff does not automatically allege a regulatory taking simply because it will not enjoy the full extent of its development rights in light of Mayor Taylor's

actions.  *See Quinn*, 862 F.3d at 442 ("A "regulation is not a taking merely because it 'prohibit[s]

the most beneficial use of the property…'").  Based on the analysis above, the allegations are not

sufficient to infer an economic impact in favor of a taking.  While Plaintiff has alleged some

deprivation of the most beneficial use of the development rights, that is not enough to weigh in

favor of a taking.  *Id.*  Therefore, the allegations do not support an inference that the first prong

weighs for a taking.

Under the second prong, Plaintiff argues it had an investment-backed expectation in the

development of the Marina Landing Project.  The *Clayland* court considered whether a property

interest arising from development of land in the zoning context.  *Clayland*, 987 F.3d at 354.  There,

it was not "objectively reasonable" to expect a zoning designation to remain unchanged in the

plaintiff's favor based on the zoning laws because they specified when a plaintiff's property

interest vested.  *Id.* at 354-55.  The court also considered that the plaintiff "never obtained a permit,

began construction, or took any action to any other development to which it now claims

entitlement." *Id.* Here, Plaintiff has done more.  The allegations support an inference that Plaintiff

took the requisite efforts under the LDA to access its development rights.  (ECF No. 1).  Plaintiff

alleges the expenditure of substantial funds and work performed on site after closing on the

purchase of the property in June 2023 *Id.* at 4.  Unlike in the zoning context, there are no

ordinances, laws, or provisions in the LDA that specify a particular time at which Plaintiff's rights

vested.  *Id.* To the contrary, the LDA became effective upon signing.  *Id.*   Plaintiff also asserts

that Mayor Taylor was not acting pursuant to a local authority or any discretionary authority under the LDA when holding up the Marina Landing Project. Given the unique nature of the property interest at issue here, these allegations support an inference that the second prong weighs in favor of a taking.

Finally, under the third prong, Plaintiff argues "the character of the government action is more akin to a physical invasion depriving Developer of its constitutionally protected property interest…than a 'public program adjusting the benefits and burdens of economic life to promote the common good.'"  (ECF No. 20) (citing *Penn Cent.* 438 U.S. 104 at 124).  Defendants argue "the character of the governmental action was to raise the genuine governmental issue of insufficient parking (or two parties claiming contractual rights to the parking)." (ECF No. 23).  As Defendants point out, the language of the LDA parking provision provides, "The City hereby expressly acknowledges and agrees to reserve the parking lot…for the exclusive uses of (i) public parking and (ii) parking for the Marina Landing Project…" (ECF No. 1 at 7).  Moreover, in the April 4, 2025, letter from Mayor Taylor (ECF No. 1-5 at 3), Mayor Taylor indicates,

> My expectation and hopefully yours is to make Marina Landing parking independent. To divorce your dependence on adjacent parking. The suggestion I had -was simply to delete the boat house and reduce the demand for parking and allow additional site space for parking.
> Naturally, we could waive review fees, etc. but many of your approaches implies this is the city's burden to cure, which is simply not the case considering you were aware of the Hanna Agreement[8] before you went to closing on the property. The suggestions you have made are simply a non-starter.

---

[8] The Court recognizes and accepts as true Plaintiff's allegation that it only learned of the Hanna Parking Agreement from Mayor Taylor's February 2025 Letter. (ECF 1-4).

> I am working with our DID department for a follow-up approach. An approach that perhaps offers the best compromise and closest sufficient parking model.

(ECF No. 1-5 at 3).

Based on the analysis for a per se taking and the first prong of the ad-hoc taking, this Court does not find that these facts rise to the requisite level for a physical or complete economic value taking. Given that the facts do not support an inference that the character of this government action is a taking, the third prong weighs against a taking. Therefore, Plaintiff fails to plead a cognizable takings claim.

## IV.     CONCLUSION

For the reasons stated above, Defendants' Partial Motion to Dismiss (ECF No. 13) is GRANTED, and Count I is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.


Dated: <u>September 9, 2025</u>                    <u>            /s/                 </u>

                                                  J. Mark Coulson
                                                  United States Magistrate Judge