**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P: (410) 962-4953 | F: (410) 962-2985
mdd_jmcchambers@mdd.uscourts.gov

June 25, 2026

LETTER ORDER AND OPINION TO COUNSEL

RE:  *1 Fitzwater Street, LLC v. Taylor et al*
     Civil No. 1:25-cv-01328

Dear Counsel:

Plaintiff, 1 Fitzwater Street, LLC ("Plaintiff"), brought this breach of contract case against Defendants Mayor Randolph Taylor and the City of Salisbury (together, the "Defendants"). (ECF No. 1). Currently before the Court is a dispute concerning the City's obligation to produce electronically stored information ("ESI"). (ECF Nos. 34, 36, 37).

The issues have been fully briefed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, the Plaintiff's request is GRANTED.

**I.    Background**

The instant case asserts a breach of contract claim against the City. (ECF No.1 at 2).[1] The lawsuit arises from a Land Disposition Agreement ("LDA") whereby the City agreed to lease property to Plaintiff for development. *Id.* Under the LDA and a subsequently enacted resolution that approved the LDA, the parties agreed that the City would reserve a parking lot for the development project. *Id.* at 4. The parking lot to be used in the development project here was also subject to a contract between the City and another local business. *Id.* at 6.

After development was underway, Plaintiff asserts that Mayor Taylor turned his attention to the project, and the City refused to provide certain necessary permits notwithstanding all approval requirements being fulfilled. *Id.* at 5. After a series of communications between Plaintiff and Mayor Taylor, the relationships continued to deteriorate, and the development project came to a halt. *Id.* at 6.  Plaintiff filed suit shortly thereafter.  *See id.*

In the Complaint, Plaintiff asserted a 42 U.S.C. § 1983 claim alleging various property right violations as well as a breach of contract claim. *Id.*  In a Memorandum Opinion and Order dated September 9, 2025, the Court dismissed without prejudice the § 1983 claim, thereby leaving the breach of contract claim as the sole remaining claim in this action.  (ECF No. 24).

Presently before the Court is Plaintiff's request for an order directing the City to provide certain ESI and metadata. (ECF No. 34).  The parties have filed their position statements (ECF

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. Where a document does not have an electronic filing stamp, the Court is referring to the page numbers at the bottom of the document.

No. 34, 36, 37), and no hearing is necessary. Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, I will GRANT an order compelling the City to produce ESI in native format with metadata as requested.

## II.    Analysis

This dispute presents the straightforward question of whether the City is obligated to provide ESI in native format with metadata instead of the PDFs actually produced. (ECF Nos. 34, 36). Plaintiff states that contrary to the production format specified in Plaintiff's interrogatories and requests for production of documents, Defendant has provided "static PDFs stripped of critical metadata." (ECF No. 34 at 1). Plaintiff represents that on March 13, 2026, it served interrogatories and requests for production of documents (the "Requests") on the City. The Requests "expressly required the City to produce ESI in native format with associated metadata." The Court requested a copy of the Requests and the City's responses thereto for a better understanding of the exchange of information between the parties. Review confirmed that Plaintiff specified that responsive ESI should be "in its native form with <u>all associated metadata</u>." (emphasis in original).

Review of the Court's ESI Principles urges the parties to try to agree on a production format in their initial discussions about whether ESI will be part of the discovery process, and where no agreement is reached, production in any reasonable format specified by the requesting party consistent with principles of proportionality. See *Principles for the Discovery of Electronically Stored Information in Civil Cases* (the "*Principles*"), 2.04; *see also* (ECF No. 29) ("The Parties have conferred concerning electronically stored information and agreed to generally adhere to the Principles for the Discovery of Electronically Stored Information in Civil Cases as a guideline."). The *Principles* also make clear that in any event a party need not "accept production in a form that substantially degrades or jeopardizes the utility, integrity, and/or authenticity of ESI." *Id*. PDF production, by converting a native file to a static image and stripping the metadata, is just such a form.

To be very clear, there are many cases where the parties prefer static image production of ESI, whether by PDF or even paper copy. For example, if the ESI is not voluminous, if the parties are not using an ESI review platform that requires native or "near native" files, or if the metadata surrounding a file is not germane, static image or paper production might be the most efficacious. And where the parties are in agreement on that, the Court need not insert itself. Where, however, there is no agreement, the requesting party need not accept such a format.[2]

Though not exhaustive, the *Principles* provide alternatives for ESI production format that includes metadata, including near-native "Hybrid" Production (e.g., TIFF file format with associate load files containing associated metadata) and native production as Plaintiff has specified

---

[2] There may be unusual cases where, notwithstanding the requesting party's format preference, the Court may instead order static image or paper production if the corresponding burden imposed on the producing party is far beyond any notions of proportionality AND there is no compelling need for metadata. In such situations, the Court would expect the issue to be presented at the very beginning of the discovery period.

here[3] (ESI in its original format and associated metadata). *Principles*, app. 2.1 and 2.2. In this rapidly evolving area, there no doubt are others.

Review of the City's responses to the Requests confirms that no specific objection was raised to the production of native format and TIFF files prior to production in PDF format. When the present discovery dispute arose post-production, the parties were unable to confer by some means other than email for various scheduling reasons.[4] The City now raises several points in defense of its production of PDFs. First, the City clarifies that without greater technical know-how, they will have to hire a third-party consultant to assist with the production of the metadata and native file extraction, who charges a $7,500 retainer, a rate of $375 per hour, and additional costs for ESI storage. (ECF No. 36 at 9). Accordingly, the City argues that the burden of such production outweighs its relevance. The Court has several observations. First, that objection was not raised prior to production. To the contrary, the parties agreed to "generally adhere" to the *Principles,* which advise that production should be in the format specified and that the requesting party in any event need not accept a static image production as discussed above. (ECF No. 29). Second, the Federal Rules of Civil Procedure were specifically amended in 2006 to contemplate the discovery of ESI, and since that time, the hiring of a third-party vendor where necessary is a routine practice for producing parties who do not otherwise have such capability where ESI is at issue in the case.

Second, the City argues that it produced PDFs because they present the "only practical, reasonable means by which the documents can be extracted, reviewed, redacted, and Bates-labeled." *Id.* at 3. Although that may be true without the assistance of a vendor, the Court observes that the City has contacted a vendor and has provided the contours of the expenses at issue here. *Id.* at 9. All of the tasks listed by the City can be easily incorporated into a vendor-assisted review and production process.

---

[3] Plaintiff further indicated that "ESI capable of being converted into image format shall be converted to single-page TIFF files, Bates numbered, and produced with fully searchable text." All other ESI that cannot be converted into images, however, shall be produced with a single-page TIFF placeholder. Ultimately at issue here is whether Defendant must produce ESI as requested rather than in the produced PDF format.

[4] Plaintiff describes a challenging meet and confer timeline with several delayed responses from Defense Counsel. Defense Counsel explains in her position statement that she was on vacation, which complicated the meet and confer communication efforts and that she is unfamiliar with the technical production of native format ESI. (ECF No. 36 at 1-2). The Court further observes that there has been some dispute concerning the parties' obligations to meet and confer by way of a telephone conference. From what the Court can discern from a limited record, counsel for both sides have made efforts to resolve the issue notwithstanding the timing challenges and have taken the positions they believe best represent their client's interests. To that extent, the Court will caution the parties only that compliance with the local rules and the Court's Informal Discovery Memorandum requires meet and confer efforts by way of a telephone conference, in person meeting, or some other "reasonable effort" that means "more than sending an email or letter." *See* Loc. R. 104.7; (ECF No. 27). The Court also notes that both parties' position statements do not conform with the requirements set forth in ECF No. 27. In recognition of the time and resources expended upon the current discovery dispute, the Court has considered the position statements as submitted. In the future, the parties are directed to ensure all discovery dispute practices conform with the Loca Rules and the Court's Informal Discovery Memorandum, should any disputes arise. (ECF No. 27).

Third, the City questions the need for metadata.  However, in one email pasted into the City's position statement (ECF No. 36 at 4-5), Plaintiff specifies that it seeks emails, electronic documents, and attachments in native format and needs the metadata to (1) determine authorship, recipients, or custodians; (2) to confirm sent/received timestamps; (3) to reconstruct timelines; (4) to identify whether emails were forwarded, altered, or created contemporaneously; (5) to understand file paths, folder locations, or document families; and (6) to authenticate documents. (ECF No. 36 at 4). The Court agrees that the stated reasons for the metadata request establish relevance Rule 26(b).  In view of the complicated facts underlying the contracts and resolutions at issue, the Court finds that information such as when emails were received, sent, edited, and by whom are all relevant details to the present litigation. By extension, the Court likewise agrees that the converted PDFs are less usable, as the production strips the Plaintiff of its ability to review the relevant metadata. The Court does not find the expenses required by the City's vendor to outweigh the relevance of the metadata in this context.  Moreover, the Court is not persuaded by any argument that duplicative production is unduly burdensome, as it was the City that unilaterally decided to ignore the requested production format in the first place.  For these reasons, the Court does not find the City's 26(b) case law persuasive.

Notwithstanding the provisions of the Court's *Principles* cited above, the rules themselves require the City to produce ESI in the requested format, Rule 34 provides that a party's document requests "may specify the form or forms in which [ESI] is to be produced." Fed. R. Civ. P. 34(b)(1)(C).  Plaintiff did so in its original requests.  To part of the City's burden concern, the 2006 Advisory Committee Notes recognize that "[s]pecification of the desired form or forms may facilitate the orderly, efficient, and cost-effective discovery of electronically stored information" and

> A party that responds to a discovery request by simply producing electronically stored information in a form of its choice, without identifying that form in advance of the production in the response required by Rule 34(b), runs a risk that the requesting party can show that the produced form is not reasonably usable and that it is entitled to production of some or all of the information in an additional form… The rule does not require a party to produce electronically stored information in the form it which it is ordinarily maintained, as long as it is produced in a reasonably usable form. But the option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation. If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature.

Fed. R. Civ. P. 34(b) advisory committee's notes to 2006 amendment.

Plaintiff emphasizes that when a party specifies in its original requests that documents be produced in native format, and the producing party fails to do so and fails to state an objection to the format, an order compelling production is proper. The Court agrees. *See United States v. Town of Irmo, S.C.*, No. 3:18-CV-03106-JMC, 2020 WL 1025686, at *5 (D.S.C. Mar. 3, 2020) ("A 'blanket objection' to a request for the production of documents must still detail how that production constitutes a negative impact."); *see also Bobb v. FinePoints Private Duty Healthcare, LLC*, Civ. No. JKB-23-03129, 2024 WL 4355048, at *3 (D. Md. Sept. 30, 2024) (requiring a producing party to supplement responses with bates numbering in accordance with the ESI Principles because the parties had not agreed upon some other numbering method).

Although the City states it "objected and repeatedly informed Plaintiff of the circumstances why the City did not comply with Plaintiff's demand and why producing this information in the requested format was unduly burdensome and non-proportional to the needs of this case," review of the City's discovery responses shows no such objection. As such, the Court agrees that this case presents a scenario much like that in *Town of Irmo, South Carolina*, in which the Court required the defendant city to supplement production. *Town of Irmo, S.C.*, 2020 WL 1025686, at *5. Therefore, the Court is inclined to require production of ESI in a native format. The Court is mindful, however, that the work involved in ESI compilation may not be as efficient as Plaintiff would like. The Court will therefore grant the City's request to produce the native format ESI within forty-five days.

Ultimately, Plaintiff's request for an order compelling the production of ESI in native format with metadata preserved is GRANTED.

## III.   Conclusion

For the foregoing reasons, the City shall provide the requested native format ESI and metadata within forty-five days of the date of this Opinion and Order.

Notwithstanding its informal nature, this letter constitutes an order of the Court and should be docketed as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge

5